*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Z. M. DANIEL, Minor.

UNPUBLISHED
December 14, 2023

Nos. 366381; 366382
Ionia Circuit Court
Family Division
LC No. 2022-000208-NA

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father appeals of right the order terminating his parental rights to his minor child, ZD, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood that child will be harmed if returned to the parent) (Docket No. 366381). Respondent-mother appeals of right the order terminating her parental rights to ZD under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j) (Docket No. 366382). Further, respondent-mother challenges the trial court's findings that the Department of Health and Human Services (DHHS) made reasonable efforts to reunify the family and that it was in ZD's best interests to terminate her parental rights. We affirm.

## I. FACTUAL BACKGROUND

In 2021, respondent-mother brought ZD to Michigan from Nebraska as an infant, and this case began in May 2022 after the DHHS received a complaint that respondent-mother was living in a disabled vehicle in Ionia with her boyfriend and ZD. Respondent-mother and her boyfriend were reportedly smoking methamphetamine in the vehicle that had no heat, relying on passersby for food, and ZD was unclean and only partially clothed. Petitioner alleged that respondent-mother admitted to having mental-health issues, including depression, borderline-personality disorder, and bipolar disorder. When the case began, respondent-father was in Nebraska waiting to be sentenced for failing to register as a sex offender. Respondent-father had not seen ZD for approximately one year. Also, he had mental-health issues, and he informed petitioner that he had attempted suicide on multiple occasions and had been diagnosed with ADHD and bipolar disorder.

Throughout the case, respondents barely participated in services, and respondent-mother's parenting time was eventually suspended after she missed several scheduled parenting-time visits.

-1-

Also, although respondent-mother claimed to be sober for several months during this case, in the month before the termination hearing, respondent-mother relapsed and used methamphetamine.

At the termination hearing, the trial court noted that respondent-mother had not only failed to show improvement, but also was perhaps in even worse shape than she was when the case began. The trial court did acknowledge, though, that respondent-mother was no longer living in a car. At the time of termination, respondent-father was incarcerated. The trial court found that termination of respondents' parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). The trial court further found that termination of respondents' parental rights was in ZD's best interests. Respondents now appeal.

## II.  LEGAL ANALYSIS

Respondent-father challenges the trial court's finding that statutory grounds for termination existed under MCL 712A.19(b)(3)(c)(*i*), (c)(*ii*), and (j). Respondent-mother asserts that the trial court erred when it determined that the DHHS had made reasonable efforts toward reunification, that the trial court erred when it found that a statutory basis for termination of her parental rights existed, and that the trial court erred when it concluded that termination of her parental rights was in ZD's best interests. We will address each of these issues in turn.

### A.  RESPONDENT-FATHER'S ARGUMENT

Respondent-father's only challenge to the trial court's order terminating his parental rights to ZD is that the trial court erred when it found that termination of his parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). We disagree that the trial court erred, and therefore we affirm the trial court's order terminating respondent-father's parental rights to ZD. This Court reviews for clear error the trial court's finding that there were statutory grounds for termination of respondent-father's parental rights. *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). Factual findings in a termination hearing are also reviewed for clear error. MCL 3.977(K). Clear error exists only "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Under MCL 712A.19b(3)(c)(*i*) and (*ii*), a respondent's parental rights can be terminated if:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the

conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

MCL 712A.19b(3)(c)(*i*) applies when the conditions that brought the child into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services. *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). To overcome a barrier to reunification, "meaningful change in the conditions existing by the time of adjudication" must be shown. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Here, the conditions that led to adjudication for respondent-father were housing, resource availability and management, employment, domestic relations, communication and interpersonal skills, and criminal history. Other conditions that were later identified included emotional stability and parenting skills. On appeal, respondent-father begins his argument by asserting generally that all conditions that led to adjudication had been rectified, or that he could have rectified any such conditions within a reasonable amount of time. But aside from that general assertion, respondent-father fails to explain how the trial court clearly erred when it found that termination was warranted under MCL 712A.19b(3)(c)(*i*) or (c)(*ii*). Respondent-father fails to identify any conditions that he had rectified, or that he could have rectified in a reasonable amount of time. Instead, respondent-father offers a variety of excuses for not participating in services designed to rectify the problems.[1] For example, with respect to emotional stability and parenting skills, respondent-father does not assert that those conditions had been rectified, or that they would be rectified within a reasonable amount of time. Instead, he asserts that he did the best he could, but that he was hampered by the limited services offered to him. He was incarcerated for much of this case, but he ignores the fact that he was not incarcerated for several months at the beginning of this case, yet he failed to comply with the case-service plan during that time. Moreover, although respondent-father offers excuses for why he could not participate in services, he testified at the termination hearing that, despite his serious diagnoses and suicide attempts, he did not believe that his mental health was an issue that he had to address. That testimony belies respondent-father's contention that the only impediment stopping him from rectifying that issue was a lack of services. Beyond that, the record reveals that respondent-father failed to participate in many of the services that were offered to him.

It is undisputed that more than 182 days elapsed between the entry of the initial disposition order and the termination of parental rights. Respondent-father fails to assert, let alone cogently argue, that the conditions at issue were rectified or would be rectified within a reasonable amount of time. The evidence supports the trial court's finding that respondent-father had failed to address the identified conditions. Thus, he cannot show that the trial court erred when it determined that termination of his parental rights was warranted under MCL 712A.19b(3)(c)(*i*) and (*ii*).

Having ruled that the trial court did not clearly err in finding that MCL 712A.19b(3)(c)(*i*) and (*ii*) provided statutory grounds for termination, we need not address respondent-father's claim that the trial court erred by finding that termination was also justified under MCL 712A.19b(3)(j). "Only one statutory ground need be established by clear and convincing evidence to terminate a

---

[1] We note that, although respondent-father alludes to issues he experienced in receiving services, he does not argue on appeal that the DHHS failed to make reasonable efforts towards reunification.

respondent's parental rights . . . ." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Thus, we affirm the trial court's order terminating his parental rights to ZD.

## B. RESPONDENT-MOTHER'S ARGUMENTS

Respondent-mother presents three arguments on appeal. First, she contends that the DHHS failed to make reasonable efforts toward reunification. Second, she asserts that the trial court erred when it found that statutory grounds for termination existed. Finally, she claims that the trial court erred in concluding that it was in the best interests of ZD to terminate her parental rights. Each of these arguments will be addressed in turn.

### 1. REASONABLE EFFORTS

Respondent-mother contends that the trial court erred when it found that the DHHS made reasonable efforts to reunify her with ZD, alleging myriad shortcomings with the efforts extended by the DHHS. Specifically, respondent-mother asserts that the DHHS failed to make reasonable efforts because it (1) failed to investigate relative placement of ZD with his maternal grandmother, (2) failed to offer referrals to appropriate and available services, despite the fact that the trial court instructed the DHHS to "do some handholding" of respondent-mother in that regard, (3) failed to facilitate services in Montcalm County after respondent-mother moved, (4) failed to assist her with transportation or obtaining a cell phone, (5) failed to provide her with an adequate opportunity to participate in mental-health services, (6) failed to help her apply for various forms of identification, and (7) offered her parenting-time visits in an inadequate manner.

Respondent-mother did not preserve this issue by objecting to the services provided to her or by indicating in the trial court that the services provided were somehow inadequate. See *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). We review all unpreserved claims that the DHHS did not make reasonable efforts to reunify the family for plain error that affected substantial rights. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). An error affects substantial rights "if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*.

"Under Michigan's Probate Code, the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Except for situations involving aggravating circumstances under MCL 712A.19a(2), whenever a child is removed from a parent's custody, petitioner is required to exert reasonable efforts to rectify the conditions that led to the child's removal by adopting a case-service plan that outlines the steps the DHHS and the parent will take to rectify the conditions that led to the court's involvement and thereby achieve reunification. *In re Sanborn*, 337 Mich App 252, 258-259; 976 NW2d 44 (2021). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). To be sure, the DHHS must "expend reasonable efforts to provide services to secure reunification" of the parent and child, but the parent has a "commensurate responsibility to participate in the services that are offered." *In re Frey*, 297 Mich App at 248.

Respondent-mother contends that the DHHS failed to investigate ZD's placement with his maternal grandmother. The record reflects that the DHHS sent paperwork to, and left information

-4-

by telephone for, the grandmother at the beginning of the case asking whether she would agree to have ZD placed in her care. The grandmother never responded and claimed that she did not know that ZD was in foster care until December 2022 despite speaking to respondent-mother at various times during the proceedings. The DHHS then sent new paperwork to the grandmother to begin the process of investigating her home for foster care. But the grandmother did not begin the review process until March 2023. At the termination trial, the grandmother stated that she had hoped that respondent-mother would work out her issues on her own, that she did not ask about ZD's location or welfare because she wanted to avoid the issue, and that she had her own problems that made her think that it would not be feasible to care for ZD and respondent-mother. Therefore, contrary to respondent-mother's claim, the DHHS made reasonable efforts to investigate that relative placement.

Respondent-mother faults the DHHS for not doing enough "handholding" in working with her. The record reflects that, contrary to her contentions on appeal, respondent-mother was capable of calling service providers to schedule appointments. The foster-care worker referred respondent-mother for five psychological examinations and respondent-mother made those appointments, but she failed to attend any of them. The DHHS also referred respondent-mother to services in Ionia County and Montcalm County for mental-health treatment, parenting classes, and substance-abuse treatment. Despite reminders and offers of transportation and a gas card, respondent-mother failed to attend enough appointments to make progress on any aspect of her case-service plan. The record reflects that the DHHS also offered to help respondent-mother fill out identification paperwork, job applications, and housing applications and the foster-care worker offered to drive respondent-mother around so respondent-mother could submit the paperwork. Respondent-mother repeatedly declined those offers. Moreover, the issues with parenting time stemmed largely from respondent-mother's irregular attendance.

Respondent-mother acknowledges the testimony of the foster-care worker that respondent-mother never requested that petitioner provide her access to a reliable phone, but she characterizes that as a failing by the DHHS for not offering her that service. The record reveals that respondent-mother did not alert petitioner or other service providers of her phone problem. Therefore, she has not demonstrated that it was plain error for the trial court to find that reasonable efforts were made in this case, despite any communication issues respondent-mother may have experienced. Hence, the record shows that the DHHS made efforts aimed at reunification. Respondent-mother simply failed to live up to her end of the bargain by availing herself of those services. See *In re Frey*, 297 Mich App at 248. Accordingly, respondent-mother has failed to establish plain error affecting her substantial rights with respect to the efforts that petitioner made toward reunification.

2. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother claims the trial court erred in finding clear and convincing evidence to support termination of her parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). Here, the conditions that resulted in adjudication were emotional stability, substance abuse, parenting skills, housing, resource availability and management, employment, communication and interpersonal skills, and lack of a social support system. These issues were identified in the initial parent-agency treatment plan as areas of need. Respondent-mother takes issue with the trial court's finding that there were certain issues that were implied. The transcript is not entirely clear, but it appears that the "implied" barriers identified by the trial court were parenting skills, resource availability, and

employment. As the trial court put it, "although not specifically stated but certainly implied with regard to her homelessness and substance abuse would be her parenting skills, and her resource availability, and I guess employment would really be another condition that existed." In addition, the trial court expressly stated that, "[a]s far as other conditions for [respondent-mother] that were identified that led to jurisdiction, those include emotional stability and lack of sufficient social support system, and, then, employment to the extent that it would be implied . . . ."

Respondent-mother claims the trial court identified parenting skills, resource availability, employment, emotional stability, and lack of social support as "implied" barriers. But even under the most generous interpretation of the trial court's statements, it only found that parenting skills, employment, and resource availability was implied barriers. More significantly, the trial court was incorrect when it asserted that any of those barriers were implied or not explicitly stated. All those barriers were explicitly identified as barriers to reunification for respondent-mother by the DHHS as far back as the initial treatment plan. Accordingly, to the extent that the trial court relied on those barriers in finding that termination was warranted, it did not err by relying on barriers that were merely implied.

Respondent-mother further argues that she did rectify some of the barriers to reunification. But the improvement in those areas was overcome by the fact that respondent-mother had failed to rectify her substance abuse and housing by the time of termination. Regarding substance abuse, respondent-mother admitted that she used methamphetamine within one month of the termination hearing. At the termination hearing, she acknowledged that her situation was dire and that she felt like she was spiraling downward. The trial court correctly found not only that respondent-mother failed to improve over the course of the case, but also that she was perhaps in worse shape at the termination hearing than she had been at the beginning of the case. Additionally, there was ample evidence to demonstrate the impact that respondent-mother's use of methamphetamine had on ZD. Respondent-mother admitted to leaving ZD with her boyfriend while she used methamphetamine, even though her boyfriend was also using methamphetamine. The evidence also showed that while respondent-mother was using methamphetamine, ZD—who was just 1 year old—lived in squalid conditions where even his most basic needs were not met. Respondent-mother's substance abuse was a condition that led to adjudication that had not been rectified, and there was not a reasonable likelihood that that condition would be rectified within a reasonable time, so that justified the trial court's finding that termination was warranted under MCL 712A.19b(3)(c)(*i*).

Focusing on housing, respondent-mother claims she had "either partially or substantially" rectified that barrier. Although respondent-mother had made some progress on housing and was no longer living in a car, she had yet to secure appropriate housing and it was unclear when or if she would be able to do so. Therefore, housing remained a barrier to reunification at the time of termination and supported termination of her parental rights under MCL 712A.19b(3)(c)(*i*).

The trial court's finding that termination was warranted under MCL 712A.19b(3)(c)(*i*) was well-supported and not clearly erroneous. Because we conclude that the trial court did not clearly err when it found that termination was proper under MCL 712A.19b(3)(c)(*i*), we need not address respondent-mother's challenges to the trial court's findings that termination was also proper under MCL 712A.19b(3)(c)(*ii*) and MCL 712A.19b(3)(j). See *In re Ellis*, 294 Mich App at 32.

### 3. BEST INTERESTS

Finally, respondent-mother faults the trial court for finding that termination of her parental rights was in ZD's best interests. If "a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014). We review findings on the best interests of a child for clear error. *In re White*, 303 Mich App at 713. When deciding whether termination is in a child's best interests, the focus is upon the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The "[b]est interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App at 733. When making that finding, the trial court "may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Additional significant considerations include the parent's history of domestic violence, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App at 714.

Here, the trial court offered many reasons why termination of respondent-mother's parental rights was in ZD's best interests. The trial court concluded that respondent-mother had "incredible instability in her life," and that she had not completed a psychological evaluation. The trial court further stated that it was impossible to know how much more time respondent-mother would need to rectify all the existing barriers (if she could rectify them at all) and that ZD needed permanency, especially given his young age (2 years old at the time of termination). Additionally, the trial court discussed respondent-mother's lack of compliance with the case-service plan and her engagement in questionable romantic relationships. The trial court also determined that respondent-mother did not have a close bond with ZD and she had not seen ZD in more than six months. Regarding his current placement, the trial court found that ZD was doing well and that there was a possibility of adoption in that placement. Further, the trial court discussed the possibility of relative placement, and concluded that ZD's grandmother was unlikely to be a viable placement. On the basis of those findings, the trial court determined that termination of respondent-mother's parental rights was in ZD's best interests.

Respondent-mother asserts that the evidence did not support the trial court's best-interests findings, and that there was a relative placement available. She claims that she demonstrated some improvement on several matters that the trial court identified, she criticizes the DHHS for creating the circumstances cited by the trial court by suspending her parenting-time visits, and she contends that the trial court's determination that ZD could possibly be adopted by his foster mother was not supported by the evidence. Although respondent-mother argues that she had made some progress, she does not dispute the trial court's findings that ZD needed permanence and that it was unknown how long it would be before respondent-mother could provide that permanence.

Respondent-mother tries to explain the absence of a bond with ZD by blaming the DHHS for suspending her parenting time, but her own actions resulted in that suspension. The trial court initially denied a request to suspend respondent-mother's parenting time, which was based on her irregularity in attending visits and her failure to participate in services. In its order, the trial court warned respondent-mother that parenting time would be suspended if she missed two more visits. Only after respondent-mother missed two more parenting-time sessions was her parenting time

suspended. Although respondent-mother blames that suspension of her parenting time for causing her lack of a bond with ZD, she does not contend that that suspension was unlawful. To the extent the suspension of her parenting-time visits affected her bond with ZD, that suspension was caused by respondent-mother's actions, and the trial court did not err in its assessment of her bond with ZD.

Respondent-mother also attempts to cast doubt on the validity of the trial court's finding that ZD was in a pre-adoptive placement, but respondent-mother ignores the testimony of the foster mother that she was "absolutely willing" to adopt ZD. Thus, we reject respondent-mother's claim that the trial court erred in finding that ZD was in a placement with the possibility of adoption.

Finally, respondent-mother contends that ZD should have been placed with his maternal grandmother, which would have made termination not in ZD's best interests. Because placement with the grandmother was not seriously offered as a solution until just before the termination trial, and the grandmother did not consider herself able to take care of ZD, the trial court did not err by finding that termination of respondent-mother's parental rights was in ZD's best interests. In sum, respondent-mother's challenge to the trial court's finding that termination of respondent-mother's parental rights was in ZD's best interests is unpersuasive, so we must uphold the termination.

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates